IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKI WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number CIV-08-186-C |
| ) | |
| CLIFFORD DAMON, individually, ) | |
| JON CLOWDUS, individually, ) | |
| JAMES BROWN, individually, ) | |
| FRANK TORRES, individually, ) | |
| TODD HODGES, individually, ) | |
| and THE CITY OF OKLAHOMA CITY, ) | |
| a municipal corporation, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

In December 2007 Plaintiff and two friends were shopping at an Ulta store in Oklahoma City.[*] Concerned about the behavior of Plaintiff and her companions, the store personnel began watching them on the store security cameras and in person. While observing Plaintiff and her companions, the store personnel noted that the male with Plaintiff was leaving the store for extended periods of time and then returning. The store personnel also found an empty box in one of the aisles. With these events raising their suspicions, the store employees called 911, seeking the assistance of the Oklahoma City Police Department. Defendants Damon and Clowdus responded to the call. Defendant Clowdus was a field

---

[*] Unless otherwise noted, these facts are undisputed and taken in the light most favorable to Plaintiff.

training officer and Defendant Damon was the trainee assigned to him. Defendant James Brown also arrived at the store, followed shortly thereafter by Defendant Hodges. Defendants Brown and Hodges visited with the store personnel and viewed the store's security video tape. Defendant Brown then approached Plaintiff and her companions and asked for identification. Plaintiff produced a driver's license and the male companion also produced a driver's license. The other female had no identification. Defendant Brown requested that Defendant Hodges check the identifications to determine if there were any outstanding warrants. Based on that check, it was determined that Garrett, the male companion, had an outstanding felony arrest warrant from Grady County and an Oklahoma City municipal arrest warrant. Based on those warrants, Mr. Garrett was arrested and searched. Defendant Brown then visited with Plaintiff and requested her consent to search her jacket and her vehicle. Defendant Damon searched Plaintiff's vehicle first, then Defendants Clowdus and Brown searched it again to ensure that the trainee had properly searched the vehicle. Finding no merchandise from the Ulta store on Plaintiff, her companions, or in the vehicle, the Defendant Officers released Plaintiff and her female companion. Mr. Garrett remained in custody on the outstanding warrants.

Plaintiff filed the present action asserting that Defendants' actions violated the Fourth Amendment's prohibition against unreasonable searches and seizures, arguing that Defendants engaged in an unlawful search as they were looking for grounds for arrest or accusation. According to Plaintiff, the officers did not have a reasonable suspicion sufficient to warrant an investigative detention, Plaintiff did not voluntarily consent to either the search

of her person or the search of her vehicle, and in all their actions of the evening the Defendant Officers were acting in accordance with official and/or unofficial policies of Defendant City intended to deprive Plaintiff of her constitutional rights.

Defendant Officers filed a motion for summary judgment asserting that the undisputed material facts demonstrate they are entitled to qualified immunity and therefore judgment should be entered in their behalf. Defendant City filed a motion for summary judgment, arguing that Plaintiff cannot show the violation of any constitutional right, that the actions of the Defendant Officers were reasonable, and/or that the policies followed by the Defendant Officers were constitutional.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant.

Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

Because the Defendant Officers have asserted the defense of qualified immunity, the typical summary judgment process is slightly modified. Under Tenth Circuit precedent, once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to establish the violation of a constitutional or statutory right. Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185-86 (10th Cir. 2001). Applying this standard the question in this case becomes: has Plaintiff established that Defendants violated her Fourth Amendment rights by their actions in December of 2007?

In evaluating the evidence of this case, the Court must first determine the type of encounter between Plaintiff and Defendant Officers. Fourth Amendment jurisprudence dictates that encounters between police officers and citizens fall into three distinct categories: consensual encounters, investigative stops, and arrests. Oliver v. Woods, 209 F.3d 1179,

1186 (10th Cir. 2000). Defendants recognize that in viewing the facts in the light most favorable to Plaintiff, the encounter here should be classified as an investigatory detention. The Court agrees. While there is some evidence demonstrating the events were nothing more than a consensual encounter, giving Plaintiff the benefit of the doubt, analysis under the more stringent investigatory detention is appropriate.

To justify an investigative detention, an officer must have some minimal level of objective justification. The standard is significantly lower than probable cause but requires more than a hunch. United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994). In evaluating the reasonableness of the Plaintiff's detention, the test is whether the officer's conduct was reasonably related to the goals of the stop. Id. at 1052. The Court must avoid unrealistic second guessing of the police officer's decisions regarding the basis for the stop and should not require an officer to use the least intrusive means possible in the course of the detention. United States v. King, 990 F.2d 1552, 1562-63 (10th Cir. 1993).

Applying these guidelines to the facts at issue here, the Court first outlines the evidence available to the Defendant Officers. The undisputed facts demonstrate that the Defendant Officers were called to the Ulta store in response to a request for assistance by store employees. Once arriving at the store, the Defendant Officers were permitted to view the videotape from the store's security cameras showing the actions of Plaintiff and her companions and discussed the nature of those actions with store employees. Thus, the Defendant Officers first gathered all the relevant information before taking any action directly involving Plaintiff. *Compare* Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1257 (10th

Cir. 1998) (holding qualified immunity not available where officers did not obtain all relevant and available evidence before acting). Based on this evidence, the Defendant Officers believed that the reasonable next step was to detain Plaintiff and her companions and further investigate their suspicions.

Plaintiff argues that each of the actions of her and her companions can be explained as innocent conduct. In contrast, Defendant Officers offer suspicious reasons for the conduct. However, these differences do not foreclose summary judgment. Rather, the Court must determine if, considering the dual possibilities for Plaintiff's and her companions' actions, a reasonable jury could find the actions of the Defendant Officers reasonable. In resolving this question, the Court will analyze each portion of the Defendant Officers' conduct that Plaintiff asserts was improper.

The undisputed facts demonstrate that the Defendant Officers first requested identification from Plaintiff and her companions. This request does not implicate the Fourth Amendment. See Florida v. Bostick, 501 U.S. 429, 434-35 (1991). Thus, Plaintiff cannot hinge her claim on that action from Defendant Officers.

Next, the Defendant Officers requested permission to search Plaintiff's coat. Certainly, a search of a person or their belongings is more intrusive than a request for identification. However, given the circumstances facing the Defendant Officers that night in the store, the Court finds searching Plaintiff's jacket was within the scope of a reasonable investigatory detention as it was a valid method to investigate whether any evidence existed to support the Defendant Officer's suspicions.

Even were the Court to doubt the reasonableness of the request to search her coat, Plaintiff cannot demonstrate the search violated her Fourth Amendment rights. When Defendant Hodges requested permission to search Plaintiff's coat, she plopped down to the floor, took off her coat, and started crying. Whether Plaintiff intended her actions to constitute consent or not, it is clear that a reasonable officer in the situation or under the circumstances existing at that time could believe Plaintiff had granted consent to search. Because this is a section 1983 rather than a criminal matter, the burden of showing lack of consent is on Plaintiff. See Valance v. Wisel, 110 F.3d 1269, 1278-79 (7th Cir. 1997). Here, the undisputed evidence indicates that in response to Defendant's request to search her jacket Plaintiff simply dropped the jacket on the floor and plopped herself down on the floor. From this evidence, the Defendant Officers were reasonable in believing she consented to the search and no reasonable jury could find otherwise.

Plaintiff next argues that the search of her car was unconstitutional. Following the search of the Plaintiff and her companions inside the store, the Defendants requested that they be permitted to search Plaintiff's car. The reasons offered by Defendants for this request was the statement of the store employee that the male companion of Plaintiff had left the store and gone outside for several minutes and from that evidence the Defendant Officers surmised that it was possible that stolen goods were located in Plaintiff's car. In support of their contention that Plaintiff had given consent for the search, Defendants quote several excerpts from Plaintiff's deposition. Those excerpts make clear that when asked if they could search her car, Plaintiff said yes and voluntarily handed the officers her keys. In an

7

eleventh hour attempt to save her case, Plaintiff's counsel makes the conclusory assertion that Plaintiff has no clue what a voluntary consent to search entails. In essence, the argument is that because Plaintiff was not informed she had the right to refuse her consent, her consent could not be voluntary. Of course, any failure to advise a person of his right to refuse consent is only one factor in determining whether the consent was voluntary. United States v. Sanchez- Valderuten, 11 F.3d 985, 990 (10th Cir. 1993). As noted above, because of the civil nature of this action, the burden is on Plaintiff to demonstrate that her consent was not voluntarily given. In light of Plaintiff's testimony in her deposition, no reasonable jury could find that she did not freely consent to the search of her vehicle. As Plaintiff's deposition testimony makes clear, when asked about a search of her vehicle Plaintiff offered up her car keys and led Defendant Officers to the parking lot, directing them to her car. At no time did Plaintiff in any way suggest that she was not willingly conceding to the officers' request.

Finally, Plaintiff complains about the request/order that she sit in one of the Defendant Officer's patrol car while the search of her vehicle was ongoing. Defendants have offered substantial reasons for that request that indicate Fourth Amendment concerns are not implicated. The request was not intended to detain Plaintiff or seize her body; rather, Defendant Officers made the request in the interest of Plaintiff's safety and comfort. The night was cold and the officers were concerned about Plaintiff standing in a dark parking lot at night. There is no indication anywhere in the record that Plaintiff was placed in the police car to detain her or otherwise restrict her freedom. Consequently, Plaintiff has failed to

proffer any evidence from which a reasonable jury could find a violation of the Fourth Amendment.

Because Plaintiff has failed to demonstrate the violation of a constitutional right in regard to the officers' actions, the Court finds the officers are entitled to qualified immunity and will enter judgment in their favor on that basis.

Plaintiff also has brought claims against the City of Oklahoma City, the employer of the Defendant Officers. Plaintiff asserts that Defendant City of Oklahoma City failed to properly train and/or supervise the Defendant Officers and these failures led to the constitutional violations by the Defendant Officers. Because the Court has found the Defendant Officers engaged in no constitutional violation, Plaintiff's claims against Defendant City cannot survive. Accordingly, this Defendant is also entitled to judgment.

For the reasons set forth herein, the Defendant City's Motion for Summary Judgment (Dkt. No. 39) is GRANTED. Likewise, the Motion for Summary Judgment of Defendants Damon, Clowdus, Brown, Torres and Hodges (Dkt. No. 47) is GRANTED. A separate judgment will enter.

IT IS SO ORDERED this 19th day of February, 2009.

ROBIN J. CAUTHRON
United States District Judge